STATE *vs.* SAMUEL A. McDANIEL, EVAN G. BOYD, HARVEY B. WIGGLESWORTH and WALTER RASH.

*Criminal Law—Obtaining Money by False Pretenses—Bill of Particulars; Should be in Writing—Motion to Quash Indictment; Not Necessary to State Reasons—Exceptions— Discretion of Court—Continuance, on Application by State—Statute—Discharge of Prisoner; Second Term—Pleading—Practice.*

1. The motion for a bill of particulars should be in writing and filed in court; and it ought to point out fully all the particulars desired.

2. Although it would be a good practice, there is no rule requiring the reasons to be set out, in a general motion to quash an indictment. Such motion goes simply to the face of the indictment, which discloses whatever defects there may be, and of which the framer is bound to take notice.

3. Indictment in this case held to be sufficient, on motion to quash.

4. The motion of defendants for an order on the Attorney-General to file a bill of particulars refused, the Court being of opinion that the case did not warrant the making of such an order. The granting or refusing of such motion rests largely in the discretion of the Court, and is not a matter to which an exception can properly be taken.

5. The rule laid down in the case of *State vs. Hawkins, 2 Pennewill, 474,* in reference to the continuance of a criminal case on the ground of the absence of a material witness, held to equally apply when the application is made by the State. The Attorney-General must state the name of the absent witness, and what he expects to prove by him.

6. A continuance of the case refused, under *Chapter 115, page 858, Sec. 17, Rev. Code,* at the second term after the finding of the indictment.

*(September 22, 1902.)*

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Herbert H. Ward,* Attorney-General, and *Robert H. Richards,* Deputy Attorney-General, for the State.

*Anthony Higgins, Alexander B. Cooper* and *William S. Hilles,* for the defendants.

Court of General Sessions, New Castle County, September Term, 1902.

The defendants were indicted at the May Term, 1902, for OBTAINING MONEY BY FALSE PRETENSES. The indictment contained two counts. The first count was as follows:

"THE GRAND INQUEST OF THE STATE OF DELEWARE and the Body of New Castle County, on their oath and affirmation, respectively, DO PRESENT:

"That Samuel A. McDaniel, of the Hundred of New Castle, Harvey B. Wigglesworth, of the Hundred of Wilmington, and Walter Rash, of the Hundred of Wilmington, all in the County of New Castle and the State of Delaware, on the 31st of March in the year of our Lord one thousand nine hundred and one, at New Castle Hundred in the County of New Castle aforesaid, he the said Samuel A. McDaniel, then and there being the Sheriff of said County of New Castle, and he the said Harvey B. Wigglesworth, then and there being a warden in the county jail for said county and a deputy under him, the said Samuel A. McDaniel, Sheriff, as aforesaid, and the said Walter Rash, then and there being a warden in the said county jail and a deputy under him, the said Samuel A. McDaniel, Sheriff as aforesaid, and he the said Evan G. Boyd, then and there being Mayor of the City of New Castle in said county, and being persons of evil minds and dispositions, with force and arms, unlawfully and wickedly did conspire, combine, confederate and agree together, by certain false pretenses unlawfully to obtain for the use and benefit of the said Samuel A. McDaniel, from a certain Horace G. Rettew, the said Horace G. Rettew then and there being the Receiver of Taxes and County Treasurer of the County of New Castle aforesaid, a large sum of money, to wit, the sum of two thousand five hundred dollars, lawful money of the United States of America, the kind and denomination of which money is to the jurors aforesaid unknown, of the money, goods and chattels then and there, the property of and in the ownership, pos-

session and control of him the said Horace G. Rettew, Receiver of Taxes and County Treasurer for said New Castle County as aforesaid : the which said false pretenses, in pursuance of and according to the said conspiracy, combination, confederacy and agreement of the said Samuel A. McDaniel, Harvey B. Wigglesworth, Walter Rash and Evan G. Boyd so had as aforesaid, were thereafter, on and about the 30th of June, 1901, at the county aforesaid, embodied in a certain false, deceitful, fraudulent and padded bill of the said Samuel A. McDaniel as Sheriff as aforesaid for the three months ending on the said 30th day of June, A. D. 1901, which said false, deceitful, fraudulent and padded bill was in due course then and there presented by the said Samuel A. McDaniel as Sheriff as aforesaid to George D. Kelley, County Comptroller for the County of New Castle as aforesaid, and to the Levy Court Commissioners of New Castle County aforesaid, for the purpose of then and there obtaining the approval thereon by the said Comptroller for said county and by the said Levy Court Commissioners for said county, and the consequent payment thereof then and there out of the funds and moneys which were then and there the property of and in the possession, ownership and control of him the said Horace G. Rettew, Receiver of Taxes and County Treasurer for said county, and by which said false, deceitful, fraudulent and padded bill was then and there falsely, untruly, fraudulently and knowingly stated and set forth the pretended and therein alleged number of vagrants lodging and prisoners being and remaining in the jail of New Castle County from day to day in and during the three months ending on the said 30th day of June, A. D. 1901, with intent then and there by means of the said false pretenses to cheat and defraud the said Horace G. Rettew, Receiver of Taxes and County Treasurer of said county as aforesaid of the said sum of money, to the evil example of all others in like case offending, and against the form of an act of the General Assembly in such case made and provided, and against the peace and dignity of the State."

The second count differed from the first only in that it set

forth, after the charge that the defendants " did conspire, combine, confederate and agree together,"—the words " and with other evilly disposed persons whose names are to the jurors aforesaid unknown."

Counsel for defendants gave notice that they would move to quash the indictment and if that was refused they would move the Court to order the Attorney-General to file a bill of particulars.

The Attorney-General asked that both the motion to quash the indictment and the motion for the bill of particulars be reduced to writing and that the counsel for the defendants furnish the State with a copy of the same.

LORE, C. J.:—We think that the application for a bill of particulars ought to be in writing and ought to point out fully all the particulars you desire.  And it should be filed in the Court of General Sessions.

*Mr. Higgins :*—Has the Court ruled whether we should set out the reasons in our motion to quash ?

LORE, C. J.:—While it would be a good practice and would probably shorten the matter to specify to what particular defect you object in the indictment, yet I know of no rule requiring the reasons to be set out in a general motion to quash.  Such motion goes simply to the face of the indictment which discloses whatever defects there may be and of which the framer is bound to take notice.

MOTION TO QUASH INDICTMENT.

Counsel for defendants moved to quash the indictment as insufficient.

*First.*  Because it failed to allege the facts more particularly set forth and asked for in defendant's motion for a Bill of Particulars filed in this cause, and which need not be repeated here.

The gravamen of the conspiracy to quash any indictment against the defendants is that they conspired to obtain from the Receiver of New Castle County, certain moneys, which false pre_tenses were "embodied in a certain false, deceitful, fraudulent and padded bill of the said Samuel A. McDaniel, Sheriff, as aforesaid, for the three months ending on the said 30th day of June, 1901 ;" which bill in due course was presented by the said sheriff to the County Comptroller and to the Levy Court Commissioners of New Castle County, for the purpose of obtaining the approval of the Comptroller and of the Levy Court Commissioners and the consequent payment of such moneys from the said Rettew.

" In which said false, deceitful, frandulent and padded bill was then and there falsely, untruly, fraudulently and knowingly stated and set forth the pretented and therein alleged number of vagrants lodging and prisoners being and remaining in the jail of New Castle County from day to day in and during the three months ending on the said 30th day of June, A. D. 1901."

The same objection applies to both counts of the indictment as the only difference between them is that the second count alleges that the defendants conspired with other persons to the jurors unknown.

The indictment proceeds upon the admission that the Sheriff is entitled under the law to certain compensation for food and lodging furnished by him to vagrants committed to his custody, which is undoubtedly true.

In an indictment for conspiracy to commit an act which is a crime at common law, it is not necessary to describe the unlawful act further than by its specific name.

The present case, however, charges a conspiracy to commit a crime which is rarely statutory and not a crime at common law, inasmuch as obtaining money under false pretenses is not a crime at common law, and is made so only by the statute of Delaware.

The indictment charges, *first*, a conspiracy.

*Second.* The object of the conspiracy was, to wit, by certain false pretenses, to obtain for the use of Samuel A. McDaniel, from Horace G. Rettew, Receiver of Taxes, Two Thousand Five Hundred Dollars.

*Third.* The means by which the conspiracy was said to be effected and the false pretenses worked, namely by a certain false and padded bill.

*Fourth.* That the false pretenses contained in the bill presented to the Comptroller and to the Levy Court Commissioners, contained a larger number of vagrants lodging and prisoners in the jail during the three months in question than were really there.

The point of our objection to the indictment under this head is that it fails entirely to specify the names and dates of said vagrants which the State claims to have been untruthfully and falsely contained in said bill.

It will be observed that the bill is alleged not only to have been false and fraudulent, but to have been. false and fraudulent because of having been " padded."

On the other hand the term " padded " is subject to exception in an indictment as entirely wanting in particularity.

What does " padded" mean ?

As used in the indictment it is clearly " mere slang." But, taken in the meaning attributable to it when used as slang it would mean that the said bill was good in part, and bad in part. That it contained the names of certain vagrants who were in the jail during the three months and also the names of certain other vagrants who during the three months were not in the jail, and it is on the theory that this is true, that we discuss the question of the insufficiency of the indictment.

In England it is undoubtedly the law that an indictment for conspiring to obtain goods or money by false pretenses need not specify the means by which the conspiracy was to be effected.

*Rex vs. Dill, 2 B. & Ald., 204 ; Rog. vs. Comperts, 9 A. P. & E.*

*N. S., 824, 838, (58 Eng. Com. L.) ; Rex vs. King, 7 A. & E. N. S., 721.*

At one time it was doubtful whether or not *Rex vs. Gill* was not overruled in *Rex vs. Biers, 1 A. & E., 327.* But while re-affirming *Rex vs. Gill,* Lord Denman indulged in a great reflection against the rule. In delivering the opinion in *Rex vs. Gompertz, supra,* he said : " The authority of *Rex vs. Gill,* never overruled, but founded on excellent reason, has always been recognized, though not without regret, because that form of indictment may give too little information to the accused."

Accordingly, there has been a departure from the English rule in many of the American authorities.

*Com. vs. Eastman, 1 Cush., 189, 222, etc. ; Com. vs. Hunt., 4 Met., 111, 123 ; Com. vs. Gillespie, 7 S. & R., 475 ; Com. vs. Shedd, 7 Cush., 514; Lambert vs. The People, 9 Cowen, 576 ; Com. vs. Hartmann, 5 Barr, 60 ; Carson on Criminal Conspiracy, 193 ; 2 Horton on Am. Criminal Law, Sec. 2305 ; Com. vs. Hunt, 4 Met., 123 ; 1 Stark. Crim. Pl., (2d Ed.), 156 ; Rex vs. Fowler, 2 Russell on Crimes, (1st Ed.), 812.*

### BRIEF OF STATE ON MOTION TO QUASH THE INDICTMENT.

The indictment is far within the common law authorities as to particularity and certainty.

*Reg. vs. Gill, 2 Barn. & Ald., 204; Reg. vs. Kenwick, 5 Ad. & El. (48 E. C. L.), 49 ; State vs. Adams, Houst. Cr. Cas., 361 ; People vs. Richards, 1 Mich., 217, 219, 224; People vs. Clark, 10 Mich. 310, 312-314; People vs. Arnold, 46 Mich., 268, 270-274; State vs. Crowley, 41 Wis., 276, 280 ; Com. vs. Shedd., 7 Cush. (Mass.), 514; Wood vs. State, 47 N. J. L., 469; State vs. Young, 37 N. J. L., 184, 185, 186 ; State vs. Ripley, 31 Me., 386, 388-9 ; State vs. Grant, 86 Iowa, 216 ; U. S. vs. Wilson, 60 Fed. Rep., 893, 894, 895.*

Cheats and conspiracies made misdemeanors, etc. *Rev. Code,*

*1893*, § *6, p. 961*. By the word " cheat " is meant a cheat at common law. All cheats, frauds and false pretenses as might affect the public were punishable at common law by indictment.

*2 Russell on Crimes, 604, 605, 607, 613, 616, 617; 1 Russell on Crimes, 207, 208; Rex vs. Bembridge, cited 6 East 334; Rex vs. Martin, 2 Camp., cited 1 Russell on Cr. 207; U. S. vs. Watkins, 3 Cranch C. C., 441, 28 Fed. Cas. 419, 425, (No. 16, 649); 12 Ency. of Law, 794, 795.*

Definition of a token, " a document or a sign of a fact."
*2 Bouvier L. Dict., 1123.*

The common law offense may stand with the statutory offense.
*State vs. Buchanan, 5 H. & J. (Md.), 335-6.*

Whether the statute of the State prohibiting cheating by false pretenses covers the indictable cheats at common law or not, it does not alter the point that the cheat set forth in this indictment was an indictable offense at common law. The statute may be declaratory of the common law, so far as common law indictable cheats is concerned, and thus still be a sound contention. If the offense designated by the indictment as the object and purpose of the conspiracy be in fact and law an offense known to the common law, all the authorities cited on both sides of this argument approve of the contention and doctrine that the indictment need not set forth the means by which the unlawful object was intended to be accomplished.

The rule contended for by the defense on this point must be upon some reason. No reason appears, except that in the judgment of some courts the means must be set out in a conspiracy indictment in all cases except where the offense was a recognized one at common law, and therefore in a certain degree *malum in se*, and not merely *malum prohibitum*. When it appears, however, that the offense described in an indictment is not only an offense by statute, but also an offense at common law, no reason remains why upon principle the means should be set out.

*Per Curiam :*—The indictment is sustained.

### MOTION FOR BILL OF PARTICULARS.

The defendants, by their attorney, move the Court for an order on the Attorney-General to file or furnish the defendants with a Bill of Particulars showing the particular acts relied upon, and more particularly:

(1). The number and names of the alleged "vagrants, lodgers and prisoners" in the jail of New Castle County, during the quarter ending June 30, 1901.

(2). The number and names of said vagrants and prisoners alleged to have been falsely reported to have been in the said jail for the period aforesaid.

(3). The days and dates upon which said vagrants and prisoners alleged falsely to have been in said jail, and the number being and remaining there each day.

(4). In what specific way the said bill of said Sheriff as presented to the County Comptroller and Levy Court was false or padded as to numbers, dates and names.

(5). That he set forth with accuracy the number and names of said falsely pretended vagrants and prisoners for each day during said quarter ending June 30, 1901, giving therein their names and the dates of alleged commitments.

(6). That he set forth accurately and specifically the overt acts upon which he relies.

(7). That he shall with sufficient detail set forth the overt acts, and the names, number and dates of all commitments of the vagrants lodging and prisoners in said jail, which are alleged to have been falsely presented by the said Samuel A. McDaniel as " being and remaining in said jail from day to day in and during

the three months ending on the said thirtieth day of June, A. D. 1901"

(8). That he supply the defendants with the facts on which the prosecution seeks to establish the offense.

All of which is moved by reason of the charges of the Attorney-General in the indictment, and also that the defendants may not be taken by surprise at the trial, and that the judgment, should it be rendered against them, may be pleaded in bar to any further prosecution, etc.

(The above motion was signed by Samuel A. McDaniel and attached to the same was an affidavit made by the said McDaniel to the effect that the defendants were from the generality of the said indictment unable to prepare themselves for their defense).

BRIEF OF DEFENDANTS UPON MOTION FOR BILL OF PARTICULARS.

If the indictment be general, the Court will order the prosecutor to furnish a particular of the charges to be relied upon.

*2 Wharton Cr. L., 2303, 2337; Rex vs. Hamilton, 7 C. & P., 448; Rex vs. Kendrick, 5 A. & E. N. S., 49; Carson's Law on Cr. Com., p. 188.*

Where an indictment contained counts charging a conspiracy to cheat tradesmen of goods, without mentioning any specific case or name, time or place, it was held that the defendant was entitled to such particulars.
*Reg. vs. Rycroft, 6 Cox, C. C., 4 Ency. Pld. & Pr., 723, note 2.*

It is now a general rule, perfectly well established, that in all legal proceedings, civil and criminal, bills of particulars or specifications of facts may and will be ordered by the Court whenever it is

satisfied that there is danger that otherwise a party may be deprived of his rights, or that justice cannot be done.

*Commonwealth vs. Giles, 1 Gray, 469.*

Bill of particulars ordered and sustained, in the case of indictment for conspiracy to obtain money of the county by false pretenses by means of fraudulent bill for work, labor and materials.

*MacDonald vs. The People, 126, Ill, 150.*

In the same case, judgment on the verdict of guilty reversed because at the trial evidence admitted outside of the Bill of Particulars.

*Ibid.*

### BRIEF OF STATE UPON DEFENDANTS' MOTION FOR BILL OF PARTICULARS.

An affidavit, if any is filed, in order to have pertinency to the issue upon an application for Bill of Particulars must be an averment of ignorance of the facts on which the State expects to rely.

*Rex vs. Hodgman, 3 C. P. 422, (14 E. C. L.); Rex vs. Bootyman, 5 C, P. 300, (24 E. C. L.); Rex vs. Hamilton, 7 C. P., 488, (32 E. C. L.); Commonwealth vs. Bartilson, 85 Pa. St., 482, 483.*

The affidavit of McDaniel makes no averment of ignorance and only refers to the supposed generality of the indictment.

The State also refers to *MacDonald vs. People, 126 Ill , 150,* as showing the limitations of any order for Bill of Particulars made by the Court, where the charge is conspiracy to obtain money by false pretenses, and the truth depends upon showing the falsity of bills presented. This case shows that the Court will only order the date and number of the alleged false bills to be furnished to the

defense, together with leave to inspect any records where such bills or accounts are kept.

The indictment in this case now under discussion itself goes very much further than the order for Bill of Particulars directed by the Illinois Court.

LORE, C. J.:—The Court have considered the argument upon the motion for a bill of particulars in the case of *State vs. McDaniel et al.*, and have reached the conclusion that this case does not present itself to us in such a way as to warrant this Court in making an order for a bill of particulars. We, therefore, refuse to make such order.

(Counsel for defendants thereupon asked to note an exception to the above decision of the Court.)

LORE, C. J.:—We understand that it is conceded by counsel for the defendants that this matter rests largely in the discretion of the Court.

We do not think this is a matter to which an exception can be properly taken, but with that statement by the Court we will note that you asked leave to except.

(The defendants thereupon moved for a continuance to the September Term upon an affidavit signed by the defendants, alleging absence from the State of a material witness and set out what they proposed to prove by said witness).

Continuance granted.

(At the September Term, the Attorney-General moved for a continuance to the next term on a like ground).

*Mr. Hilles*, of counsel for defendants, stated that he would waive the affidavit by the Attorney-General, but insisted that if the Court held that there was ground for continuance the defend-

ants would insist upon the Attorney-General stating the name of the absent witness and what he expected to prove by him; citing *State vs. Hawkins, 2 Pennewill, 474.*

*A. B. Cooper,* of counsel for defendants, made a motion that the State either proceed with the prosecution at this term, or that the defendants be discharged, this being the second term after their indictment, under *Chapter 115, Sec. 17, Revised Code, 858;* contending that said statute which applied to misdemeanors had also been successfully invoked in the unreported murder case of *State vs. Richard Spittle.* That if it was applicable to misdemeanors the reason was much stronger for applying it to felonies.

*Ward, Attorney-General,* contended that the rule laid down in *State vs. Hawkins, supra,* requiring the defendant to state the name of the absent witness and what he proposed to prove, when applying for a continuance at the second term, did not apply where the *State* asked to have a case continued at the second term, and stated that the names of the witnesses for the State were upon the back of the indictment and that the defendants were thereby apprised of the names of all of the State's witnesses, but that in the case of the defendants the State had no such opportunity to learn who their witnesses were; that there was no one who could make such an affidavit on behalf of the State, upon which to base such an application for continuance. That an affidavit made by the Attorney-General should not be required in this Court; and that if he made the affidavit he made it as an individual who happened to be holding the position of Attorney-General; and that it is a duty which ought not to be imposed upon the Attorney-General to make the affidavit upon behalf of the State which he represents, because he represents no client but the State, and by his oath of office he has sworn to do justice without any fear or favor or any question of that sort.

LORE, C. J.:—We think that the State in a case of this kind

should give the name of the absent witness, what it proposes to prove by him and the probability of getting him here at the next term of court.

(The Attorney-General thereupon stated that the name of the absent witness was Montylaoo A. Cole, and detailed what the State expected to prove by said witness).

LORE, C. J.:—The Court are unanimously of the opinion, under the circumstances of this case and in view of the statute cited by Mr. Cooper—and by that parity of reasoning applying it to this case—that we ought not to continue this case to the next term.

(The Attorney-General thereupon entered a *nolle prosequi* as to each of the said defendants.)